Defendants base their appeal upon four issues:
1. New evidence has been discovered showing that two weeks after the hearing with Deputy Commissioner Nance, plaintiff became employed by Joe's Auto Parts in Yadkinville, North Carolina.
2. Defendants seek a credit for the executor fees which plaintiff earned during the same period in which he was receiving workers' compensation benefits from defendants.
3. Defendants contend that the injury of February 18, 1992 was a change of condition and not a new injury.
4. Defendants allege that plaintiff is only entitled to temporary partial disability benefits or wage loss benefits after September 30, 1992 because he voluntarily terminated his employment with Flow Motors.
The undersigned have reviewed the prior Opinion And Award and find no good grounds for reconsideration of the evidence; rehearing the parties; or amending, modifying or otherwise changing the prior Opinion and Award, except for the following: a minor modification in Finding of Fact Number 20 by adding the word "wage" after "average weekly"; deleting the words "and for six weeks thereafter" on Line 2 of Finding of Fact Number 16; modifications to Finding of Fact Number 17 and Conclusion of Law Number 7; and modifications to Paragraph Number 1 of the Award.
The Full Commission declines to consider the information offered by defendants in the Motion for a New Hearing concerning plaintiff's course of employment subsequent to the hearing before the Deputy Commissioner. Once defendants have resumed payment of compensation as ordered herein, the proper remedy for cessation of such compensation is an Industrial Commission Form 24.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as follows:
STIPULATIONS
1. In I.C. No. 020443 (date of injury 5 January 1990) there are Form 21 and 26 Agreements which were approved by the Industrial Commission and are a part of the record. Pursuant to those Agreements plaintiff was paid temporary total disability benefits from 15 January 1990 through 12 August 1990, and 30 weeks of compensation in a lump sum for a ten percent rating to the back.
2. In I.C. No. 169274 (date of injury 23 September 1991) plaintiff was paid weekly benefits for the period from 4 October 1991 through 13 October 1991.
3. In I.C. No. 226071 (date of injury 18 February 1992) a Form 21 Agreement was executed by the parties but never approved by the Industrial Commission.
4. Aetna Life and Casualty was the compensation carrier on the risk in all three cases. The parties stipulated to medical records numbered 1-46.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner, subject to the modifications stated herein, as follows:
FINDINGS OF FACT
1. Plaintiff, who is 48 years old and has his GED, worked for several years as an over-the-counter auto parts salesman and for 15 years as a local truck driver.
2. In 1987 plaintiff went to work for defendant-employer as a transport driver whose duties included loading, delivering, and unloading gasoline and fuel oil. This job required that plaintiff lift up to 80 pounds lifting hoses and pushing couplings against loading valves.
3. On 5 January 1990 plaintiff sustained an injury to his lower back arising out of and in the course of his employment with defendant-employer when he slipped while connecting loading couplings and fell in a sitting position onto a 12-inch high curb. Following this injury, for which defendants admitted liability, plaintiff came under the care of Dr. Kelly, a neurosurgeon at Bowman Gray. Dr. Kelly diagnosed via a CT-Scan a herniated disc at L5-S1 as well as a bulging disc at L4-5, and performed a left L5-S1 laminectomy on 7 March 1990. Plaintiff did well post-operatively and was released to return to work without restrictions in August 1990 with a ten percent rating to his back.
4. Plaintiff returned to his regular job with defendant-employer and worked without incident until 23 September 1991 when he experienced a sharp pain in his low back as he was hooking up a loading valve. The pain he experienced on this occasion was not nearly as bad as that he experienced on 5 January 1990. As a result of this injury plaintiff missed two weeks of work, during which time he returned to Dr. Kelly for sharp pain in the back and left leg and mild pain in the right leg. Dr. Kelly advised plaintiff at that time that he needed to avoid bending and heavy lifting as much as possible, which may not be compatible with his job.
5. Someone who has suffered a ruptured disc and then returns to heavy manual labor has an 80 percent chance of suffering another ruptured disc.
6. Nevertheless, after being out of work two weeks, plaintiff returned to his regular job with defendant-employer and continued in that capacity until 18 February 1992, when he injured his back again as a result of a specific traumatic incident of the work assigned when he felt a sharp pain and burning in his back as he was pushing a loading valve onto a coupling. This pain was worse than that he experienced on 23 September 1991. By the end of the day he could no longer continue to work and he reported the injury to defendants.
7. On 26 February 1992 plaintiff returned to Dr. Kelly with complaints of back and left leg pain brought on by doing this heavy work. Dr. Kelly advised plaintiff to remain out of work (for ten days initially) and look for other lighter work. On 16 March 1992 Dr. Kelly advised plaintiff to remain out of work two more weeks, and on 30 March 1992 released him to work with no long periods of sitting and standing and no lifting greater than 20 to 25 pounds. Dr. Kelly was of the opinion that these restrictions were due to the 18 February 1992 injury, and that as a result of that last injury plaintiff now retained a total of 15 percent permanent impairment to the back (five percent over and above the previous rating). By 27 April 1992 plaintiff was doing reasonably well, although he still experienced some fatigue and pain in his left leg.
8. When Dr. Kelly released him with restrictions, plaintiff returned to defendant-employer but was advised there was no work available within his restrictions.
9. In May 1992 defendants hired Dave Stewart, a vocational rehabilitation counselor, to assist plaintiff in his job search efforts. Plaintiff also went to great lengths on his own to find another job within his capacity and for which he was qualified. Through his own efforts he was able to secure a position at Flow Motors in Winston-Salem as a service advisor, and he returned to work in this capacity on 10 July 1992.
10. After the injury in February 1992 defendants and plaintiff entered into a Form 21 Agreement which was signed by the parties and submitted to the Industrial Commission for approval. The average weekly wage which Chris Simmons, Aetna's claim representative, put on the Form 21 was $524.70. The Industrial Commission Claims Department returned the Form 21 to the carrier questioning the average weekly wage and the date of disability. The Form 21 was never resubmitted and therefore never approved by the Industrial Commission. However, defendants did pay plaintiff temporary total disability benefits from 4 March 1992 through 9 July 1992 at the rate of $349.80 per week.
11. The job at Flow Motors required that plaintiff work 11 hours a day Monday through Friday and eight hours every other Saturday. Out of 11 hours plaintiff had to spend nine hours standing. Soon he again began to experience left leg pain, and he returned to Dr. Kelly on 11 August 1992. Dr. Kelly urged plaintiff to continue in this job, and he did until 30 September 1992, when the left leg and back pain became worse and he had to quit. He returned to Dr. Kelly a week later.
12. A CT-Scan in October 1992 revealed the bulging disc at L4-5 which had been present in 1990 and which did not warrant surgical intervention. On 9 November 1992 Dr. Kelly advised plaintiff to continue out of work for his severe pain episode. By 11 December 1992 plaintiff was doing better, and Dr. Kelly advised him to continue vocational rehabilitation and return on an as needed basis. By 9 February 1993 plaintiff was exhibiting fair range of motion in the back and good straight leg raising.
13. Even though plaintiff made it clear to defendant-employer that he was not resigning his job with Gant just because he took a job with Flow Motors, defendant-employer took the position that plaintiff had voluntarily terminated his employment with Gant. Thereafter defendant-employer never offered plaintiff suitable work within his capacity.
14. Plaintiff's weekly gross salary with Flow Motors varied between $121.72 (the week that his son-in-law committed suicide) and $424.71. Plaintiff' week by week earnings at Flow Motors are reflected on page 1 of Plaintiff's Exhibit 7.
15. On 21 April 1993 plaintiff went to work as a dispatcher for Hardy Brothers Trucking. This job did not involve any lifting and allowed him to sit and stand as needed. He was physically able to perform the duties required of him. Nevertheless, he became caught in the middle of a family dispute between the owners and was terminated on 11 June 1993 for unsatisfactory job performance. Plaintiff earned $450.00 a week at Hardy Brothers Trucking.
16. Beginning 20 February 1993 and continuing to the date of the hearing, plaintiff collected $217.00 per week in unemployment benefits, except for that brief period of time he was employed at Hardy Brothers Trucking.
17. During 1993 plaintiff received fees totalling $4,000.00 for serving as executor of the estates of his stepson and stepson's wife. Defendants have provided insufficient evidence to show that the one-time executor fees affected plaintiff's wage earning capacity.
18. Although plaintiff's prior back surgery placed him at a greater risk of reinjuring or aggravating his back, the incident on 18 February 1992 constituted a new back injury which arose out of and in the course of plaintiff's employment with defendant-employer as a result of a specific traumatic incident of the work assigned.
19. As a result of the injury of 18 February 1992, plaintiff was unable to earn the same wages he was earning at the time of the injury in the same or any other employment, from 4 March 1992 to the date of hearing.
20. Plaintiff's average weekly wage for the injury which occurred on 18 February 1992 was $524.70, based on the admissions of the parties on the Form 21 Agreement.
21. After he was fired by Hardy Brothers Trucking, plaintiff resumed his job search efforts but has been unable to find employment for which he is qualified within his restrictions. While plaintiff may be able to lift 70 pounds on occasion, given his prior back surgery and increased risk of reinjuring his back, it is still best that he avoid work which would involve repetitive bending or heavy lifting.
22. While the job at Hardy Brothers Trucking was within his physical restrictions, plaintiff did not have sufficient experience to perform the job to his employer's satisfaction.
23. During his employment with Flow Motors and Hardy Brothers Trucking, plaintiff exhibited the partial capacity to earn some wages for brief periods. However, he was ultimately unsuccessful in each attempt because of his continued back pain or his lack of experience for the job.
24. Plaintiff has permanent work restrictions which prevent him from being able to return to work for defendant-employer at the job he was doing at the time of the injury. He has limited education and work experience and is no longer a young man. He would benefit from ongoing vocational counseling and job placement assistance.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 18 February 1992 plaintiff sustained another injury by accident to his low back arising out of and in the course of his employment with defendant-employer as a result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. As a result of the injury of 18 February 1992 plaintiff was temporarily and totally disabled from 4 March 1992 through 9 July 1992, from 1 October 1992 through 20 April 1993, and from 12 June 1993 through the date of the hearing, and is therefore entitled to weekly benefits pursuant to N.C. Gen. Stat. § 97-29.
3. For the period from 10 July 1992 through 30 September 1992 plaintiff demonstrated the partial capacity to earn the same wages he was earning at the time of the injury in other employment and is therefore entitled to benefits under N.C. Gen. Stat. § 97-30
for that period payable at the rate of two-thirds of the difference between his actual earnings each week from Flow Motors and his average weekly wage of $524.70.
4. For the period from 21 April 1993 through 11 June 1993 plaintiff demonstrated the partial capacity to earn the same wages he was earning at the time of the injury in other employment and is therefore entitled to benefits under N.C. Gen. Stat. § 97-30
payable at the rate of two-thirds of the difference between his average weekly wage of $524.70 and his actual weekly earnings at Hardy Brothers Trucking.
5. Pursuant to N.C. Gen. Stat. § 97-42.1 defendants are entitled to a credit for the unemployment benefits plaintiff has received.
6. Because the temporary total disability benefits defendants paid plaintiff from 4 March 1992 through 9 July 1992 were not due and payable when made because the Form 21 Agreement was never actually approved by the Industrial Commission, defendants may take a credit for those payments pursuant to N.C. Gen. Stat. § 97-42.
7. Defendants are not entitled to a credit for the $4,000.00 commission which was approved for plaintiff for serving as executor of the estates of his stepson and stepson's wife. This commission was temporary in nature and was not a proper index of plaintiff's earning capacity. Loss of earning capacity is the criteria used to determine a claimant's weekly disability compensation, rather than the amount actually received. Hill v.DuBose, 234 N.C. 446, 67 S.E.2d 371 (1951).
8. Defendants are hereby ordered to provide plaintiff with ongoing vocational (job placement) assistance pursuant to N.C. Gen. Stat. § 97-25.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Defendants shall resume payment of temporary total disability benefits at the rate of $349.80 per week until further Order of the Industrial Commission. Defendants are entitled to a credit for the temporary total disability benefits already paid for the period from 4 March 1992 through 9 July 1992. Defendants shall pay in a lump sum temporary total disability benefits for the period from 1 October 1992 through 20 April 1993, and also for the period from 12 June 1993 through the date of the hearing, subject to a credit for all unemployment benefits plaintiff has received from the Employment Security Commission.
2. Defendants shall pay plaintiff temporary partial disability benefits for the period and in the amounts described in paragraphs 3 and 4 of the Conclusions of Law. This compensation has accrued and shall be paid to plaintiff in a lump sum, subject to the attorney fee hereinafter approved.
3. Defendants shall pay all medical expenses incurred by plaintiff for treatment of the 18 February 1992 injury, when bills for the same have been submitted to and approved by the Industrial Commission.
4. Plaintiff's attorney is entitled to a fee of 25 percent of the compensation awarded herein, which amount shall be deducted from the lump sum due plaintiff and paid directly to Mr. Walden. In addition, defendants shall forward every fourth compensation check directly to Mr. Walden for the balance of his fee.
5. Defendants shall pay the costs.
 S/ _______________________________ LAURA KRANIFELD MAVRETIC DEPUTY COMMISSIONER
CONCURRING:
S/ _____________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _____________________________ J. RANDOLPH WARD COMMISSIONER